# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| QUINTON ANTARIO KING, JR., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 1:24-CV-00024 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| NICHOLAS BATTS, *et al.*, ) | MAGISTRATE JUDGE HOLMES |
| ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Quinton Antario King, Jr., a pretrial detainee in the custody of the Hickman County Jail in Centerville, Tennessee, filed a pro se complaint against Jail Administrator Nicholas Batts, the Hickman County Sheriff's Office, and Deputy Chief Joey Cox, alleging violations of Plaintiff's civil rights. (Doc. No. 1).

Presently pending before the Court are the following motions filed by Plaintiff: Motion to Appoint Counsel (Doc. No. 5), Motion to Ascertain Status of Case (Doc. No. 8), and "Motion for Order to Show Cause, Motion for Preliminary Injunction, Motion for Temporary Restraining Order" (Doc. No. 12).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A. Before conducting the required PLRA review, the Court will address the matter of the filing fee and the motions filed by Plaintiff.

## I. FILING FEE

Plaintiff has submitted an Application for Leave to Proceed In Forma Pauperis. (Doc. No. 2). Under the Prisoner Litigation Reform Act (PLRA), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documents (Doc. Nos. 10,

1

11), it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 2) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the Hickman County Jail to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance with this Order.

## II. MOTIONS

### A. Motion to Appoint Counsel

Plaintiff seeks the appointment of counsel in this case. (Doc. No. 5). He states that he is unable to afford an attorney, "imprisonment will greatly limit his ability to litigate," he has limited access to the law library and a limited knowledge of the law, and the issues in this case will require "significant research and investigation." (*Id*. at 1).

An indigent plaintiff in a civil action, unlike a defendant in a criminal action, has no constitutional right to the appointment of counsel; rather, the appointment of counsel in such cases is a privilege "justified only in exceptional circumstances." *Miles v. Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 606-07 (6th Cir. 1993)). The appointment of counsel for a civil litigant is a matter within the discretion of the district court. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).

Here, Plaintiff's lack of legal training and financial circumstances are typical to most pro se prisoner litigants. *See Debow v. Bell*, No. 3:10-cv-1003, 2010 WL 5211611, at *1 (M.D. Tenn. Dec. 15, 2010) (inmates are typically indigent, legally untrained, pro se litigants). It does not appear that either the factual or legal circumstances of this case are so complex as to constitute "exceptional circumstances" necessitating the appointment of counsel. Plaintiff has filed a

3

Case 1:24-cv-00024    Document 13    Filed 05/23/24    Page 3 of 12 PageID #: 66

complaint, an Application for Leave to Proceed In Forma Pauperis and supporting documents, a motion seeking counsel, a motion to ascertain status, and a motion seeking injunctive relief. The Court finds that Plaintiff is effectively representing his own interests to date. *See, e.g., Flores v. Holloway*, No. 3:17-cv-00246, 2017 WL 2812908 at *2 (M.D. Tenn. June 29, 2017) (denying motion for the appointment of counsel when petitioner submitted a "lengthy petition" demonstrating his ability to litigate his case). Accordingly, the Court finds that the interests of justice do not require the appointment of counsel at this time. Plaintiff's Motion to Appoint Counsel (Doc. No. 5) therefore is **DENIED WITHOUT PREJUDICE**. Plaintiff may renew this motion at a later time if the circumstances warrant.

**B. Motion to Ascertain Status**

Plaintiff's Motion to Ascertain Status (Doc. No. 8) is **GRANTED** insofar as the Court rules on all pending matters herein.

**C. Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction**

Most recently, Plaintiff filed what appears to be, for the Court's signature, a proposed order granting injunctive relief to Plaintiff. (Doc. No. 12). The Clerk docketed the proposed order as motion seeking such relief. Even if the Court construes the proposed order as a motion seeking a TRO and preliminary injunction, the motion fails for several reasons.

First and foremost, the motion is unsigned. Under Rule 11(a) of the Federal Rules of Civil Procedure, all pleadings filed with the court must be signed "by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a).

Next, a TRO movant must comply with specific procedural requirements. Because the movant (here, Plaintiff King) bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). And the motion for a TRO

must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

The document submitted by Plaintiff does not fulfill these procedural requirements. Plaintiff has not submitted a memorandum of law in support of a TRO motion. Neither has Plaintiff explained in writing what particular efforts he made to give notice to Defendants or why notice should not be required. The Local Rules require "strict compliance" with this notice provision by pro se moving parties. *See* M.D. Tenn. L.R. 65.01(c). Thus, Plaintiff has not placed specific facts before the Court in a manner allowing it to fairly evaluate a request for a TRO on the merits. Accordingly, to the extent that the Court construes Plaintiff's proposed order as a motion seeking injunctive relief, the motion is **DENIED WITHOUT PREJUDICE**.

### III. PLRA SCREENING OF THE COMPLAINT

The Court now turns to the required PLRA screening of the complaint. Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The Court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept a plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v.*

5

*Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the Court's "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**A. Facts Alleged in the Complaint**

The allegations of the complaint are assumed true for purposes of the required PLRA screening. Plaintiff also filed a supplement to the complaint (Doc. No. 6), which the Court also considers herein.

While in the custody of the Hickman County Jail, on November 9, 2023, Jail Administrator Nicholas Batts printed Plaintiff's "private messages and personal information" (some of which contained "intimate" messages between Plaintiff and others), placed these messages in an envelope labeled "legal mail," and gave the envelope to "an inmate [named Fowler] that's been convicted of murder", all without Plaintiff's permission. (Doc. No. 1 at 5, 12; Doc. No. 6 at 2). These printouts also contained Plaintiff's Social Security number, his family and friends' addresses and phone numbers, and information about Plaintiff's ongoing court case. In addition, the envelope contained a typed letter that said, "[I]f you want to know who is messaging your girlfriend it's your own home boy." (*Id*. at 12).

Fowler is a known gang member who has been involved in a lot of jail fights. Fowler subsequently threatened Plaintiff and his family with "harm and or death." (*Id*.) Plaintiff now suffers from fear, nightmares, and panic attacks as he feels he is in danger.

6

Plaintiff reported this incident and his concerns to Deputy Chief Joey Cox. Deputy Chief Cox asked for proof of Plaintiff's allegations. Even though Plaintiff complied and directed Deputy Chief Cox to the proof, no action has been taken by Deputy Chief Cox.

**B. Analysis**

Plaintiff's first claim is that his privacy rights were violated by Jail Administrator Batts, who Plaintiff sues in his individual and official capacities. (Doc. No. 1 at 2).

"There are no general constitutional protections against the disclosure of private information." *Hailey v. Bogota*, Nos. 20-12583, 20-12584, 2021 WL 509899, at *8 (E.D. Mich. Feb. 11, 2021) (citing *Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2008)). Instead, a right to informational privacy is protected by the Fourteenth Amendment only when a plaintiff's fundamental rights are implicated. *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 260 (6th Cir. 2011). The Sixth Circuit "has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm ..., and (2) where the information released was of a sexual, personal, and humiliating nature...." *Id*. (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)) (internal quotation marks omitted).

With respect to the disclosure of Plaintiff's Social Security number, the Constitution does not provide Plaintiff a right to privacy in his Social Security number or the other information he alleges may have been improperly released. *See Ervin v. South Cen. K.y Comty. Coll.,* No. 1:13CV-P104-M, 2013 WL 5522670, at *3 (W.D. Ky. Oct. 3, 2013) (citing *Paul v. Davis*, 424 U.S. 693 (1976) (finding that the police chiefs' actions of distributing a flyer captioned "Active Shoplifters" which contained plaintiff's photograph and name did not violate any constitutional right to privacy); *Lambert v. Hartman*, 517 F.3d 433, 445 (6th Cir. 2008) (finding that the Clerk of Court's providing of "unfettered internet access to people's Social Security numbers was unwise," but not

unconstitutional); *Cassano v. Carb*, 436 F.3d 74, 75 (2d Cir. 2006) ("We also agree ... that the Constitution does not provide a right to privacy in one's SSN. Like the Seventh Circuit and other federal courts to address this question, we decline to expand the constitutional right to privacy to cover the collection of SSNs.") (citing *McElrath v. Califano*, 615 F.2d 434, 441 (7th Cir. 1980) and *Doyle v. Wilson*, 529 F. Supp. 1343, 1348 (D. Del.1982))).

However, Plaintiff's other allegations implicate "those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981). Plaintiff asserts that inmate Fowler's awareness of Plaintiff's personal information poses a risk to Plaintiff's personal safety which is demonstrated by inmate Fowler's threats to harm or kill Plaintiff coupled with Fowler's history of violent behavior.

Further, Plaintiff asserts that "intimate" communications were disclosed. An individual has the "right to control the nature and extent of information released about that individual" and that "has been coined an informational right to privacy," noting specifically "sexuality and choices about sex ... are interests of an intimate nature which define significant portions of our personhood." *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir.1998). *See Lambert v. Hartman*, 517 F.3d 433, 440-41 (6th Cir. 2008) (applying *Bloch* ).

The Court therefore finds that Plaintiff has stated a viable right to privacy claim under the substantive due process protections of the Fourteenth Amendment against Defendant Batts in his individual capacity. Although it is unclear whether Plaintiff ultimately can prevail on this claim, the Court finds that the assertion of this claim is not frivolous or malicious under the PLRA, particularly considering Plaintiff's status as a pretrial detainee as opposed to a convicted prisoner.

The complaint also names Deputy Chief Cox in his individual capacity as a Defendant. Plaintiff's claim against Deputy Chief Cox appears to be based on his supervisory role and failure to take action after Plaintiff reported his concerns about Jail Administrator Batts's conduct and

inmate Fowler's threats. But supervisory officials, who are aware of the unconstitutional conduct of their subordinates but fail to act, generally cannot be held liable in their individual capacities. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).

Further, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Because the complaint does not allege that Deputy Chief Cox was directly responsible for any of the alleged violations of Plaintiff's rights, the claim against Cox must be dismissed.

With respect to Plaintiff's official capacity claims against Batts and Cox, when a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, Batts and Cox are alleged to be employees of Hickman County, Tennessee. (Doc. No. 1 at 2). A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by Hickman County or its agent. *Monell Dep't of Social Svcs.,* 436 U.S. 658, 690-691 (1978). In short,

9

for Hickman County to be liable to Plaintiff under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. 658, 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. Burgess, 735 F.3d at 478.

Here, the allegations of the complaint are insufficient to state a claim for municipal liability against Hickman County under Section 1983. The complaint does not identify or describe any of the County's policies, procedures, practices, or customs relating to the incidents at issue; the complaint does not identify any particular shortcomings in training or supervision or how those shortcomings caused the alleged violations of Plaintiff's rights; and it does not identify any other previous instances of similar violations that would have put Hickman County on notice of a problem. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012). Therefore, the Court finds that the complaint fails to state claims upon which relief can be granted under Section 1983 against Defendants Batts and Cox in their official capacities, which are actually claims against Hickman County. Those claims will be dismissed.

Finally, the complaint names the Hickman County Sheriff's Office as a Defendant. "[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." *Mathes v. Metro. Gov't*, No. 3:10-CV-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (Trauger, J.) (collecting

cases); *accord Campbell v. Cheatham Cty. Sheriff's Dep't*, 511 F. Supp. 3d 809, 824-25 & n.12 (M.D. Tenn. 2021) (Crenshaw, C.J.) (dismissing Section 1983 claim against sheriff's department as redundant of claim against county, and also noting that sheriff's departments "are not proper parties to a § 1983 suit"), *aff'd*, 47 F.4th 468 (6th Cir. 2022).[1]

Nor are sheriff's departments proper defendants for claims under Tennessee law. The Tennessee Code delineates sheriffs' responsibilities, Tenn. Code Ann. § 8-8-201, provides that sheriff's offices are to be funded by county governing bodies, *id.* § 8-20-120, and further provides that any person incurring an injury "resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against *the county* in which the sheriff serves," *id.* § 8-8-302(a) (emphasis added). The Hickman County Sheriff's Department is listed on Hickman County's website as a division within the County. *See* https://hickmancountytn.gov/departments/emergency-services (last visited May 21, 2024). Plaintiff has not pointed to any authority under Tennessee law that would make the Hickman County Sheriff's Department a proper entity to be sued under state law. Therefore, the Court concurs with the great weight of authority, finding that the Hickman County Sheriff's Department is not a suable entity under Section 1983 or state law.

## V. CONCLUSION AND REFERRAL

The Court has conducted the required PLRA screening of the complaint and finds that Plaintiff states a viable right to privacy claim under the substantive due process protections of the Fourteenth Amendment pursuant to Section 1983 against Defendant Batts in his individual capacity. That claim shall proceed for further development.

---

[1] The appeal in *Campbell* addressed only whether the deputy whose motion for summary judgment was denied was entitled to qualified immunity. To this Court's knowledge, the Sixth Circuit has never expressly held that sheriff's departments in Tennessee are not government entities capable of being sued, but it has suggested as much on several occasions, and it has confirmed that when a plaintiff erroneously sues "a non-juridical police department, the plaintiff often can easily fix this error by suing the city or county that operates the department." *Lopez v. Foerster*, No. 20-2258, 2022 WL 910575, at *6 (6th Cir. Mar. 29, 2022) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

Plaintiff's claim against Chief Deputy Cox in his individual capacity fails to state a claim upon which relief can be granted under Section 1983 and is therefore **DISMISSED**.

Plaintiff's claims against Defendants Batts and Cox in their official capacities, and Plaintiff's claim against the Hickman County Sheriff's Department, also fail to state claims upon which relief can be granted under Section 1983. Those claims, too, are **DISMISSED**.

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE